**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **EMERY S. LEJEUNE** | * | **CIVIL ACTION NO. 05-1716** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Emery S. Lejeune, born December 11, 1970, filed an application for disability insurance benefits on April 22, 2003, alleging disability as of September 7, 1999, due to two back surgeries. After a hearing, the ALJ concluded that claimant was entitled to a closed period of disability from September 7, 1999 through May 20, 2003, but not thereafter. Claimant appeals from this ruling.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence

---

[1] Claimant filed a prior application on May 28, 2002, which was denied initially on August 30, 2002. (Tr. 18). This application was reopened and revised with the onset date of September 7, 1999.

in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Ricardo Leoni and Lafayette General Medical Center dated March 20, 2001 through May 13, 2002**. On March 20, 2001, claimant complained of back and left leg pain after a work-related accident on September 7, 1999. (Tr. 113, 245). An MRI showed a left-sided herniated disc at L4-5. (Tr. 244). Dr. Leoni performed a microdiskectomy with medial facetectomy and foraminotomy on May 18, 2001. (Tr. 112).

Postoperatively, claimant did well, but still had some back and right leg pain. (Tr. 235, 243). An myelogram and CT scan showed a right-sided L4-5 herniated disc. (Tr. 234). On May 10, 2002, Dr. Leoni performed a medial facetectomy and foraminotomy at L4-5 on the right and fusion. (Tr. 104, 108). The diagnosis was facet hypertrophy at L4-5 with secondary radiculopathy. (Tr. 104).

After surgery, claimant continued to complain of back pain. (Tr. 230). On examination, his straight leg raising was negative, he had no weakness in his legs, and his ankle and knee jerks were +1. A CAT scan showed no nerve root compression,

but some bulging of the discs at 3-4 and 405. Dr. Leoni noted that the fusion looked like it was becoming solid.

On December 5, 2002, claimant complained of back pain and occasional right leg pain. (Tr. 227). His straight leg raising was negative, he had no weakness, and his reflexes were intact. Dr. Leoni opined that claimant would do best with rehabilitation, for which he referred claimant to Dr. Franklin.

**(2) Records from Physical Therapy Clinic of Rayne, Inc. dated March 30, 2000 to May 2, 2003**.[2] Claimant was first seen on March 30, 2000, for back pain. (Tr. 137, 178). He continued to receive treatment after his surgeries. (Tr. 117-167). At his last visit on May 2, 2003, he still had pain in the lower lumbar spine and in the lower extremity, especially when standing or ambulating for long periods. (Tr. 116). His pain was at a level 5 on a scale of 0 to 10. His pain disability was in the severe category. He remained on a homebound status, requiring assistance from family members to do activities around home.

**(3) Records from Dr. John P. Schutte dated February 28, 2002 to November 19, 2002**. On June 20, 2002, claimant still had complaints of pain following his lumbar fusion at L4-5 on May 10, 2002, but was improving overall.

---

[2]Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

(Tr. 192). He continued to complaint of pain on August 15, 2002. (Tr. 191). X-rays showed a solid fusion developing between 4-5, and a CT scan showed no evidence of a recurrent disc. Dr. Schutte's impression was lumbar disc disease.

On November 19, 2002, claimant had improved overall since the surgery, but still had persistent symptoms. (Tr. 190). On examination, he had some restriction, but good motor strength in his lower legs overall. X-rays showed a solid fusion. Dr. Schutte opined that claimant had reached maximum medical improvement. He stated that claimant could do light to medium work, but would be unable to do heavy labor.

**(4) Records from Dr. Robert D. Franklin dated November 29, 1999 to May 6, 2003**. On January 7, 2002, claimant returned post-lumbar laminectomy in May of 2001. (Tr. 212). He continued to have moderate and constant low back pain with intermittent radiation into the right lower extremity. On examination, he was mesomorphic. Neurological examination was unremarkable. Dr. Franklin determined that claimant was temporarily disabled from employment.

EMG/NCV studies of the right lower extremity dated March 6, 2002, showed no definite evidence of neuropathy or radiculopathy. (Tr. 209).

On December 19, 2002, claimant returned after the second surgery with continued moderate and constant pain in the low back with referred symptoms into the right lower extremity. (Tr. 205). He had improved since surgery. On

4

examination, he was mesomorphic and weighed 256 pounds. He had no antaglic posturing, abnormal lumbar pelvic rhythm, decreased range of motion on forward flexion, lacked lumbar extension, had pain on forward flexion and extension, and had minimal pain complaints on palpation in the lower lumbar region. He had no spasm, and was neurologically intact in the lower extremities. His reflexes were symmetrically depressed.

Dr. Franklin continued claimant's home program, recommended physical therapy, and prescribed Vioxx, Skelaxin, and Ultram. He recommended weight loss. He determined that claimant was temporarily disabled from employment.

On January 20, 2003, claimant reported that he had been in a rear-end motor vehicle accident, and that his lumbar condition had minimally worsened. (Tr. 201). His exam was static. Dr. Franklin recommended continued physical therapy and weight loss.

On March 17, 2003, Dr. Franklin wrote that claimant had not worked and had been disabled while under his care through March 11, 2003. (Tr. 198).

On May 6, 2003, claimant's symptoms persisted. (Tr. 196). On examination, he had a very abnormal lumbar pelvic rhythm and decreased range of motion on forward flexion. He complained of pain on forward flexion, extension, and on palpation in the lumbar region. He had no spasm.

Dr. Franklin opined that claimant was basically reaching maximum medical improvement as far as what he could to for him. He suggested a vocational evaluation, and thought that they were looking at light to sedentary duty. Claimant continued with the overall treatment plan.

**(5) Residual Functional Capacity Assessment (Physical) dated May 20, 2003**. Dr. Charles Leo Lee determined that claimant could occasionally lift 20 pounds and frequently lift 10 pounds. (Tr. 219). He could stand and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could occasionally perform all postural activities. (Tr. 220).

**(6) Consultative Evaluation by Dr. Raymond F. Taylor dated June 1, 2004**. Claimant complained of lower back pain radiating down his left flank to his knee. (Tr. 248). He had had no treatment since May of 2003. He was taking Adipex for weight loss. (Tr. 249).

On examination, claimant was 73 inches tall and weighed 270 pounds. (Tr. 250). His blood pressure was 132/92.

On musculoskeletal examination, claimant's straight leg raising was negative. (Tr. 251). He had no muscle spasm or tenderness. Range of motion of the extremities was normal, with no loss of muscle strength or atrophy. Grip strength was excellent, and manual dexterity and grasping ability were normal.

Claimant had no swelling, instability, or deformities of the joints. His gait and station were normal. He could walk on his heels and toes without difficulty.

On neurological exam, claimant's cranial nerves were normal. Motor nerve and sensory nerve function were normal. Deep tendon reflexes were normal.

Dr. Taylor's diagnosis was mechanical low back pain, status-post lumbar discectomy and fusion. He noted that claimant was obese, but had reportedly lost 25 pounds in the previous 2 months. (Tr. 252). He had some mild limitation of motion and extension of his back, but his examination was otherwise not too remarkable. Based on Dr. Taylor's findings, he found no reason to limit claimant's work-related activities. (Tr. 252-56).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on January 27, 2004, claimant testified that he was having pain down his left leg. (Tr. 27). He stated that he was receiving worker's compensation. The ALJ stated that he was going to send claimant to a doctor to determine his current status. (Tr. 28).

**(8) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ erred in applying the Medical/Vocational Guidelines to conclude a return to a full range of sedentary work when the record showed both exertional and non-exertional limitations; (2) the ALJ erred in failing to properly develop the record, and (3) the ALJ erred in failing to address claimant's complaints of disabling pain.

As to the first argument, claimant asserts that the ALJ improperly gave more weight to the opinions of the consultative examiner than to his treating physicians regarding his ability to return to work. (rec. doc. 12, p. 3). However, the record reflects that the ALJ analyzed the records from claimant's treating physicians, Drs. Leoni, Schutte, and Franklin, as well as those of the consultative examiner, Dr. Taylor. (Tr. 16). At claimant's last examination on November 19, 2002, Dr. Schutte opined that claimant could do light to medium work, but would be unable to do heavy labor. (Tr. 190). On May 6, 2003, Dr. Franklin opined that claimant could do light to sedentary duty. (Tr. 196). Dr. Taylor found no reason at all to limit claimant's work activities. (Tr. 252-56). As the ALJ's finding that claimant could return to a full range of sedentary work as of May 21, 2003 is supported by the evidence, it is entitled to deference.

Next, claimant argues that the ALJ failed to properly sufficiently develop the record to support his conclusion. Specifically, he argues that the transcript contains only three pages of testimony in which the ALJ concluded that he was going to send claimant for a consultative examination. (rec. doc. 12, p. 4; Tr. 25-28).

It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). However, to merit

reversal of the ALJ's decision, a claimant who does not validly waive her right to counsel must prove that he was thereby prejudiced. *Id*.; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000).

Here, claimant has not cited any specific evidence to show that he was prejudiced by the short hearing. Thus, this argument lacks merit.

Further, claimant argues that the ALJ erred in failing to address his complaints of disabling pain. (rec. doc. 12, p. 4). To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Id*. Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

9

In this case, Dr. Schutte's most recent x-rays showed a solid fusion at L4-5, and a CT scan showed no evidence of a recurrent disc. (Tr. 190-91). Dr. Franklin's EMG/NCV studies of the right lower extremity showed no definite evidence of neuropathy or radiculopathy. (Tr. 209). The latest examination by Dr. Taylor showed negative straight leg raising, no muscle spasm or tenderness, normal range of motion of the extremities, no loss of muscle strength or atrophy, excellent grip strength, normal manual dexterity and grasping ability, normal joints, normal gait and station, and normal cranial nerves, motor nerve and sensory nerve function, and deep tendon reflexes. (Tr. 251). Thus, the objective evidence does not support claimant's complaints of disabling pain.

Additionally, the ALJ noted that claimant had not seen a doctor since May of 2003. (Tr. 16, 196, 248). The ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993). Further, the latest record from Dr. Taylor indicates that the only medication that

claimant was taking was for weight loss, not pain. (Tr. 249). *See Villa*, *supra*, 895 F.2d at 1924 (ALJ could rely on claimant's failure to take medication for the relief of severe pain to discredit his complaints); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling condition); *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). As the ALJ's findings are supported by the medical records, they are entitled to deference.

Finally, claimant argues that the ALJ erred in relying on the Medical/Vocational Guidelines and should have called a vocational expert in light of claimant's non-exertional limitation due to pain. (rec. doc. 12, pp. 4-5). However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or his non-exertional impairments do not significantly affect his residual functional capacity*. (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2,

11

Section 200.00.

Here, the ALJ determined that claimant's non-exertional impairments from pain did not significantly affect his residual functional capacity after May 20, 2003. (Tr. 17). This finding is supported by the medical evidence. Additionally, as found by the ALJ, claimant's characteristics correspond to the listing at § 201.25 of Appendix 2, which directs a finding of not disabled for a younger individual who has limited or less education and has a background of skilled or semi-skilled work – skills not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.25. (Tr. 17). Thus, the ALJ's decision to rely on the grids is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

**REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed November 6, 2006, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE